UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:26-cv-00397-SSS-DTB | Date | February 13, 2026 |
| Title | *Yuehui Chen v. Kristi Noem et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER GRANTING PETITION FOR HABEAS CORPUS [DKT. NO. 1] AND DENYING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 5]

Before the Court is Petitioner Yuehui Chen's Petition for Writ of Habeas Corpus, [Dkt. No. 1, "Petition"], and Ex Parte Application for Temporary Restraining Order. [Dkt. No. 5, Application or "App."]. Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS** the Petition. The Application is **DENIED** as moot.[1]

---

[1] Given that the Petition and the Ex Parte Application for a Temporary Restraining Order raise the same claims and seek identical relief, and for purposes of judicial efficiency, the Court "advance[s] the trial on the merits and consolidate
(continued . . . )

I.     BACKGROUND

Petitioner is a native of China who has been a resident of California since 2025.  [App. at 3].  Petitioner indicates that an immigration judge ("IJ") entered a final order of removal against her but concurrently granted withholding of removal under 8 U.S.C. § 1231(b)(3)(A).  [Petition ¶ 25].  Petitioner appealed the removal order, and her appeal remains pending.  [*Id.*].

After her case was resolved, Respondents allowed Petitioner to remain at liberty under an order of supervision given her withholding grant.  [*Id.* ¶ 26].  She complied with all conditions imposed by Respondents, and on or about June 25, 2025, she voluntarily appeared at an Immigration and Customs Enforcement ("ICE") field office as instructed as part of a routine check-in.  There, Petitioner was taken into custody by ICE and has been detained at the Adelanto ICE Processing Center for over seven months, as of the date of the Application.  [*Id.* ¶ 26].

Petitioner brought the instant habeas petition on January 29, 2026, naming Secretary of the U.S. Department of Homeland Security Kristi Noem, Acting Director of U.S. Immigration and Customs Enforcement Todd Lyons, Los Angeles Field Office Director Ernesto Santacruz, and Warden of Adelanto ICE Processing Center James Janecka.  [Petition ¶ 8–11].  As relief, Petitioner (1) seeks a declaration from the Court that Petitioner's continued detention is unlawful under 8 U.S.C. § 1231 and the Due Process Clause of the Fifth Amendment to the U.S. Constitution, (2) seeks a writ of habeas corpus ordering Respondents to immediately release Petitioner from immigration custody, and (3) seeks an award Petitioner attorney's fees and costs under the Equal Access to Justice Act if she prevails in this action.  [Petition at 14–15].

---

it with" the Application.  Fed. R. Civ. P. 65(a)(2); *see Dzhabrailov v. Decker*, No. 20-CV-3118-PMH, 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously); *Prior v. Chesnut*, No. 1:25-CV-01131-JLT-EPG-HC, 2026 WL 309560 (E.D. Cal. Feb. 5, 2026) (consolidating the motion for preliminary injunction with the merits of the habeas petition); *see also* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require.").

Petitioner filed an Ex Parte Application on January 29, 2026, seeking a temporary restraining order requiring her immediate release from custody, restraining Respondents from transferring Petitioner out of the Central District of California or otherwise relocating her beyond this Court's jurisdiction pending further order of the Court, and ordering Respondents to show cause as to why a preliminary injunction should not be issued.  [App.].  The Court retained jurisdiction and directed Respondents to file an Opposition by February 2, 2026.  [Dkt. No. 6].  Respondents timely filed an opposition to the Application on February 2, 2026.  [Dkt. No. 9, "Ex Parte Opp."].

## II.  LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.  This includes challenges by noncitizens in immigration-related matters.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025).  "The Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and such "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690 (citation modified).

Whether a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal is determinative of whether the detention is, or is not, pursuant to statutory authority.  *Id.* at 699.  The basic federal habeas corpus statute grants the federal courts authority to answer that question.  *See* 28 U.S.C. § 2241(c)(3).  In doing so, courts carry out what has been described as the "historic purpose of the writ," namely, "to relieve detention by executive authorities without judicial trial." *Zadvydas*, 533 U.S. at 699 (citing *Brown v. Allen,* 344 U.S. 443, 533 (1953) (Jackson, J., concurring in result)); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.").

## III. JURISDICTION

As to whether 8 U.S.C. § 1226(e) deprives this Court of jurisdiction to hear this case, the Court finds that it does not.

Section 1226(e) says, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the grant, revocation, or denial of bond or parole." However, the U.S. Supreme Court has held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Kim*, 538 U.S. at 517 (citing *Webster v. Doe*, 486 U.S. 592, 603 (1988)); *see also Johnson v. Robison*, 415 U.S. 361, 367 (1974) (holding that provision barring review of "decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans" did not bar constitutional challenge).

Additionally, where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress's intent. *INS v. St. Cyr*, 533 U.S. 289, 308–09 (2001) (holding that title of provision, "Elimination of Custody Review by Habeas Corpus," along with broad statement of intent to preclude review, was not sufficient to bar review of habeas corpus petitions); *see also id.*, at 298 (citing cases refusing to find bar to habeas review where there was no specific mention of the Court's authority to hear habeas petitions).

Here, § 1226(e) contains no explicit provision barring habeas review, and "§ 1226(e) does not strip a district court of its traditional habeas jurisdiction, bar constitutional challenges," or preclude "claims that the discretionary process itself was constitutionally flawed . . . ." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), *abrogated on other grounds by Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Section 1226(e) thus does not deprive this Court of jurisdiction.

## IV. DISCUSSION

Petitioner argues that her detention beyond six months of her removal order, without prospect of removal, constitutes unlawful indefinite detention in violation of 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), and the Due Process Clause of the Fifth Amendment of the U.S. Constitution. [Petition ¶ 31–46]. Respondents argue that

the § 1231(a) framework does not apply because her removal order is not administratively final due to her pending BIA appeal of the removal order. [Ex Parte Opp. at 1]. Respondents contend that her Due Process rights are instead governed by bond hearing procedures under 8 U.S.C. § 1226(a) because her removal proceedings are still ongoing. [*Id.* at 2]. The Court finds that, even under § 1226(a), Petitioner's prolonged detention violates her Fifth Amendment Due Process rights. The Court also finds that the *Zadvydas* framework is not precluded, and the Due Process concerns and analysis of the *Zadvydas* court apply..

    A.    **Statutory Framework Governing Petitioner's Removal Proceeding**

Two different statutory provisions govern the civil detention of noncitizens who are involved in immigration proceedings. Broadly speaking, the apprehension, detention and release of noncitizen in *pending* administrative proceedings is governed by 8 U.S.C. § 1226(a). *Denmore*, 538 U.S. at 527–28. After *completion* of administrative removal proceedings, the detention and release of a noncitizen who has been ordered removed are governed by 8 U.S.C. § 1231(a). *Denmore*, 538 U.S. at 527; *Zadvydas,* 533 U.S. at 683 (referring to section 1231 as the "post-removal-period detention statute").

"Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018) (quoting 8 U.S.C. § 1226(a)). Except as provided by § 1226(c), which carves out a category of [noncitizens] who may not be released under § 1226(a) following the noncitizen's arrest, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2).

On the other hand, under § 1231(a), detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. *See* 8 U.S.C. § 1231(a)(1)–(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." *Avilez v. Garland*, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)–(iii)). An order of removal becomes final "only upon the earlier of (i) a BIA determination

affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order." *Ocampo v. Holder*, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8 U.S.C. § 1101(a)(47)(B)).

Here, Petitioner appealed the removal order to the Board of Immigration Appeals (BIA), and that appeal remains pending, with the briefing due on February 18, 2026. [*See* Dkt. No. 9-1, BIA Appeal Briefing Schedule]. *See also* Automated Case Information, https://acis.eoir.justice.gov/en/ (enter "226-126-522" for the A-Number, select "China" for the Nationality, and select Submit) (last visited Jan. 4, 2026) ("A case appeal was received on October 27, 2025. It is currently pending."). The order of removal is thus not "administratively final" absent a BIA determination affirming the order. *See* 8 U.S.C. § 1101(a)(47)(B) (defining final order of deportation); 8 U.S.C. § 1231(a)(1)(A) (defining date when the post-removal-period of detention commences). Statutorily, it follows that Petitioner's current detention is governed by the pre-removal-period detention statute, § 1226(a), rather than the post-removal-period detention statute, § 1231(a).

### B.   Due Process Concerns Under the *Zadvydas* Framework

As Petitioner primarily relies on *Zadvydas* to advance her argument, the Court will outline the context and mechanics of the *Zadvydas* decision, discuss the Ninth Circuit's treatment and application of the framework to non-§ 1231(a) cases, and analyze how the framework applies to the present case.

#### 1.   The *Zadvydas* Framework

In *Zadvydas*, the Supreme Court considered a challenge to the prolonged detention of two noncitizens who were being held in post-removal period detention at the discretion of the Attorney General under § 1231(a)(6). *See* 533 U.S. at 687–701. These noncitizens had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country. *See id.* at 684–86. Acknowledging that a statute permitting the indefinite detention of noncitizens would "raise a serious constitutional problem," the Court concluded that Congress had not expressly authorized the continued detention of noncitizens beyond a period reasonably necessary to secure the noncitizen's removal from the country. *Id.* at 690, 699–700 (reasoning that prevention of flight was a "weak or nonexistent" justification where removal seems a remote possibility and no longer

practically attainable and when detention no longer bears a reasonable relation to the purpose for which the individual was committed).

Thus, the Court held that after a presumptively reasonable six-month period of post-removal period detention, the noncitizen was entitled to release if he successfully demonstrated that there was "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The government then must respond with evidence sufficient to rebut that showing to continue detention. *Id.*

### 2. Ninth Circuit Treatment of *Zadvydas*

Under Ninth Circuit precedent, the due process considerations under the *Zadyvdas* framework are not limited to § 1231(a) detentions that follow an administratively final removal order.

In *Prieto-Romero v. Clark*, the Ninth Circuit held that "a [noncitizen] being held under § 1226(a), and not § 1231(a)(6), does not render *Zadvydas* inapplicable." 534 F.3d 1053, 1062 (9th Cir. 2008). After highlighting the *Zadvydas* holding that § 1231(a) did not contain any clear "indication of congressional intent to grant the Attorney General the power" to indefinitely detain, the *Prieto-Romero* court said that it would be "incongruous" for the court to conclude that "Congress intended *other* detention statutes to authorize the indefinite detention of [noncitizens], where such detention would clearly pose the same constitutional concerns." 534 F.3d at 1063. The court affirmatively held that "§ 1226(a), like § 1231(a)(6), does not authorize indefinite detention." *Prieto-Romero*, 534 F.3d at 1063. "Consistent with *Zadvydas*," the Ninth Circuit "construe[d] the Attorney General's detention authority under § 1226(a) as limited to the 'period reasonably necessary to bring about a [noncitizen's] removal from the United States,' even if continued detention in any particular litigant's case would not pose a constitutional problem." *Id.* (citing *Zadvydas*, 533 U.S. at 689).

The Ninth Circuit then applied the *Zadvydas* framework to the petitioner's § 1226(a) detention and analyzed the reasonable foreseeability of his removal to determine whether his detention was indefinite and thus constitutionally problematic. *Prieto-Romero*, 534 F.3d at 1063–65. The *Prieto-Romero* court nevertheless rejected the petitioner's habeas relief finding his removal was reasonably foreseeable—there was no evidence that his destination would not accept him or that his removal was barred by the United States's own laws, and

repatriations to his country of origin were routine and the government stood ready to remove him as soon as judicial review of his removal order was complete. *Id.* at 1063. The court there distinguished the facts of the case from the facts of *Zadvydas* and *Clark v. Martinez*, 543 U.S. 371 (2005), where removal was not reasonably foreseeable because no country would accept the deportees and no extradition treaties existed with the receiving countries. *Prieto-Romero*, 534 F.3d at 1063–64.

However, in *Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006), the Ninth Circuit held that the petitioner had successfully demonstrated that there was no significant likelihood of his removal in the reasonably foreseeable future. The court there pointed to the IJ's granting of asylum and withholding of removal under the Convention Against Torture, noting that that "the government [was] not entitled to remove [petitioner] to [his country of origin], and no other country has been identified to which [petitioner] might be removed," which formed a "powerful indication of the improbability of his foreseeable removal." *Id.*

The *Prieto-Romero* court distinguished *Nadarajah* on the basis that the *Prieto-Romero* petitioner's delay and uncertainty as to his removal was due to *judicial* relief from the removal order, as opposed to the delay in the *administrative* process the government invoked in *Nadarajah*. *Prieto-Romero*, 534 F.3d at 1064–65; *see Nadarajah*, 443 F.3d at 1081 ("[W]e are not persuaded by the government's argument that because the Attorney General will someday review Nadarajah's case, his detention will at some point end, so he is not being held indefinitely. No one can satisfactorily assure us as to when that day will arrive. Meanwhile, petitioner remains in detention."). The *Prieto-Romero* court assured itself that the petitioner's petition for review in the Court of Appeals would be resolved with "reasonable expedition" and not result in indefinite detention due to the "strict procedural rules" that govern judicial review but are absent in the administrative process. *Prieto-Romero*, 534 F.3d at 1064–65.

### 3.    Analysis

Here, Petitioner's removal is not reasonably foreseeable, so her prolonged detention poses a "serious constitutional threat" of her Fifth Amendment Due Process rights. *See Zadvydas*, 533 U.S. at 690.

First, as discussed, Petitioner is detained under the pre-removal-period detention statute, § 1226, rather than the post-removal-period detention statute,

§ 1231, because her appeal of the IJ's removal order is still pending in the BIA. However, the Ninth Circuit has made it clear that § 1226(a), like § 1231(a)(6), does not authorize indefinite detention. *Prieto-Romero*, 534 F.3d at 1063. Even if a removal order is not administratively final and does not fall under § 1231(a), detention under § 1226(a) clearly poses "the same constitutional concerns" that the *Zadvydas* court contemplated. *Prieto-Romero*, 534 F.3d at 1063. Therefore, the Court finds that application of the *Zadvydas* framework is not precluded by the administrative non-finality of Petitioner's removal order, and the Court will assess whether there is "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future" and whether the government has sufficiently rebutted that showing. *Zadvydas*, 533 U.S. at 701.

Petitioner has sufficiently demonstrated that there is no significant likelihood of her removal in the reasonably foreseeable future. As Petitioner points out, removal to China, her country of origin, is unavailable due to the IJ's grant of withholding. [Petition ¶ 27]. She has not been contacted for being removed to a third country, nor has she been interviewed by any consulate regarding travel documents. [*Id.*]. She has been given no explanation why she remains detained and what steps, if any, are being taken to effectuate her removal. [*Id.* at 9].

Just as the *Nadarajah* court held that there is a "powerful indication of the improbability of [petitioner's] foreseeable removal due to a grant of withholding and because no other country has been identified to which the petitioner might be removed, 443 F.3d at 1081–82, the Court here similarly finds that there is no significant likelihood that her removal is reasonably foreseeable. Additionally, the delay in effectuating Petitioner's removal can be attributed to the delay in the administrative process, a factor that the *Nadarajah* court emphasized in holding indefinite detention. 443 F.3d at 1081. The Petitioner nor the Court can be assured that her BIA appeal will be resolved with "reasonable expedition" because review in the BIA is not bound by "strict procedural rules" that govern in the Ninth Circuit of Appeals, as the *Pierto-Romero* court noted. 534 F.3d at 1064–65.

Respondents provide no evidence to rebut Petitioner's showing of indefinite detention. Respondents instead only focus their arguments on a wholesale rejection of the § 1231(a) framework and provide no details as to their efforts to effectuate her removal. [Ex Parte Opp. at 1]. Thus, Respondents seemingly concede the issue of indefinite detention.

Petitioner should not be effectively punished through indefinite detention for exercising her right to appeal her removal order. Although it is true that Petitioner may be responsible for some of the time during which she has been detained because she chose to appeal the IJ's adverse removal decision, it untenable to suggest that her "choice to appeal . . . adverse rulings weighs against any constitutional claim that [s]he may make regarding her detention during the course of the appeal." *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019). This Court will not require that a "petitioner who pursues [her] available legal remedies must forego any challenge to the reasonableness of [her] detention in the interim." *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *4 (N.D. Cal. Jan. 25, 2019); *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. United States Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) ("[A] detainee 'is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable.'").

Appeals and petitions for relief are to be expected as a natural part of the process. A noncitizen who would not normally be subject to indefinite detention cannot be so detained merely because she seeks to explore avenues of relief that the law makes available to her. Further, although a noncitizen may be responsible for seeking relief, she is not responsible for the amount of time that such determinations may take. *See Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747, 753 (M.D. Penn. 2004) ("Prolonged incarceration for a[] [noncitizen] whose potentially meritorious challenge to removal is part of a congested docket is indistinguishable from lengthy incarceration because the [noncitizen's] native country refuses to issue travel documents."). The price for challenging one's removal should not be continued incarceration. The mere fact that a noncitizen has sought relief from removal certainly does not authorize the government to indefinitely delay making a decision. *See e.g., Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003).

As the Supreme Court recognized, there is little question that the civil detention of noncitizens during removal proceedings can serve a legitimate government purpose, which is "preventing deportable . . . [noncitizens] from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the [noncitizens] will be successfully removed." *Denmore*, 538 U.S. at 528. However, as the Ninth Circuit noted, the government's interest in detaining a noncitizen is severely diminished when, as in *Zadvydas*,

*Clark*, *Nadarajah*, and now, here, "there was [and is] no significant likelihood that the [noncitizen] *could be* removed," rendering removal not reasonably foreseeable. *Prieto-Romero*, 534 F.3d at 1063–65. Petitioner is thus entitled to release under *Zadvydas* and Ninth Circuit precedent.

### C. Procedural Due Process Concerns

Even if the Court were to find that Petitioner's continued detention is permitted by statute, due process requires "adequate procedural protections" to ensure that the government's asserted justification for physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *See Zadvydas,* 533 U.S. at 690–91 (citation modified). "There is an important difference between whether detention is statutorily authorized and whether it has been adequately determined to be necessary as to any particular person." *Prieto-Romero*, 534 F.3d at 1065.

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this procedural protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law."); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings." (citation modified)).

The traditional test for evaluating procedural due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates the specific dictates of due process generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

### 1. Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action." Freedom from detention "is the most elemental" of private interests affected by official action. *Hamdi*, 542 U.S. at 529; *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). So, it is unsurprising that "the Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citation modified) (collecting cases). Logically, the same is true of any person who, while in removal proceedings, was never detained.

Consequently, because Petitioner was allowed to remain at liberty under an order of supervision, given her withholding grant, after her case was initially resolved, [Petition at ¶ 26], she "took with her a liberty interest which is entitled to the full protections of the Due Process Clause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025) (citation modified). Accordingly, the first *Matthews* factor favors Petitioner.

### 2. Risk of erroneous deprivation of interest through procedures used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. The risk of an erroneous deprivation is not only high in this instance—it has manifested in this case.

8 U.S.C. § 1226(a) allows the government to detain a noncitizen pending a decision on removal. But as noted above, Petitioner previously was summoned to attend her proceedings and thereafter allowed to be at liberty during the pendency of her removal proceedings. Respondents, therefore, had already determined there

was no reason to detain Petitioner under § 1226(a) at that point in time.  Despite complying with all conditions imposed by Respondents and voluntarily appearing at an ICE field office as instructed for a routine check-in, Respondents took her into custody, informing her that they intended to facilitate her removal to a third country due to her grant of withholding.  [Petition ¶ 26].

Over the prior months, courts in this circuit have repeatedly, consistently, and with growing frequency found constitutional violations where individuals are detained at check-ins or appointments without prior notice or opportunity to be heard.  *See Ramirez Tesara*, 2025 WL 2637663, at *4; *Bello Chacon v. Hermosillo*, No. 2:25-CV-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3–4 (W.D. Wash. Nov. 24, 2025); *Ho v. Noem*, No. C25-2222-RSM-MLP, 2025 WL 3466923, at *4 (W.D. Wash. Nov. 24, 2025), *report and recommendation adopted*, No. C25-2222-RSM, 2025 WL 3471855 (W.D. Wash. Dec. 3, 2025); *Francois v. Wamsely*, No. C25-2122-RSM-GJL, 2025 WL 3063251, at *4 (W.D. Wash. Nov. 3, 2025); *Ledesma Gonzalez v. Bostock*, No. 2:25-CV-01404-JNW-GJL, 2025 WL 2841574, at *8 (W.D. Wash. Oct. 7, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025); *see also Lara v. Noem*, No. 5:25-cv-3072-ODW (JCx), 2025 WL 3255001, at *4–5 (C.D. Cal. Nov. 19, 2025); *Rodriguez v. Kaiser*, No. 1:25-CV-01111-KES-SAB (HC), 2025 WL 2545359, at *5 (E.D. Cal. Sept. 4, 2025).

The procedure Respondents relied on to detain Petitioner resulted in the erroneous deprivation of Petitioner's liberty interest.  The second *Matthews* factor thus weighs in favor of Petitioner.

### 3. Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

Respondents have an interest in ensuring a noncitizen with a final order of removal appears when necessary to facilitate their removal and in ensuring the noncitizen is not a danger to the community.  *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the appearance of [noncitizens] at future

immigration proceedings" and "preventing danger to the community"). Here, however, there is no evidence the government's interests have ever been at risk since Petitioner was placed in removal proceedings. Again, Petitioner has complied with all conditions imposed by Respondents during all proceedings, voluntarily appeared for a routine check-in, and cooperated with ICE during her detention by providing information to assist in obtaining travel documents. [Petition at ¶ 29].

Accordingly, the Court finds that the government's interest in detaining Petitioner without a pre-detention hearing or some other pre-detention process is low when she had not violated any requirements during the pendency of her removal proceedings after she was allowed to remain at liberty. *See E.A. T.-B.*, 795 F. Supp. 3d at 1324 ("[T]he Government's interest in re-detaining non-citizens previously released without a hearing is low") (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as Respondents did here—is constitutionally deficient.

In sum, all three *Mathews f*actors favor Petitioner. Petitioner's initial detention with no process at all violates the procedural due process protections afforded to her by the Constitution.

### D. Attorney's Fees

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. [Petition at 15]. The EAJA provides in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the

position of the United States was substantially justified or that special circumstances make an award unjust.

      A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412 (d)(1)(A)–(B). The Court will consider an application from Petitioner requesting and substantiating reasonable fees and costs under the EAJA that is filed within thirty days of the judgment.

## V.   CONCLUSION

A pending BIA appeal may suspend the running of a statutory removal period. It does not toll the clock on the life of a person held in custody, deprived of her due process rights, awaiting adjudication of the merits of her challenge to the validity of a removal order. Fundamental fairness demands that meaningful consideration be given to noncitizens in Petitioner Yuehui Chen's situation. Respondents have failed to provide such consideration here.

Petitioner's removal seems a remote possibility, so detention no longer bears a reasonable relation to the purpose for which Petitioner was committed. Habeas corpus relief is therefore warranted.

The Court **GRANTS** Petitioner's § 2241 habeas petition and **ORDERS** her release forthwith. [Dkt. No. 1].

      Respondents are **ORDERED** to file a status report certifying compliance with the above order of release within three (3) days from the date of this Order and Judgment.  The Ex Parte Application for a Temporary Restraining Order is **DENIED** as moot.  [Dkt. No. 5].

      An entry of Judgment will follow this Order.

      **IT IS SO ORDERED.**